**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| Plaintiff/Respondent, | § | |
| | § | |
| V. | § | CR. No. C-07-251-2 |
| | § | (C.A. No. C-09-318) |
| JOSE MANUEL GOMEZ, | § | |
| Defendant/Movant. | § | |

**MEMORANDUM OPINION AND ORDER DENYING**
**MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE,**
**AND ORDER DENYING CERTIFICATE OF APPEALABILITY**

Pending before the Court is Defendant Jose Manuel Gomez' (Gomez) motion pursuant to 28 U.S.C. § 2255 (D.E. 124). The United States filed its response to the motion; Gomez filed a reply. (D.E. 126, 133). For the reasons set forth herein, Gomez' section 2255 motion is DENIED, and the Court also DENIES him a Certificate of Appealability.

**I. JURISDICTION**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

**II. FACTUAL BACKGROUND AND PROCEEDINGS**

**A.     Summary of Offense**

In 2006, Border Patrol Agents seized a large quantity of methamphetamine that was being transported from the Texas Rio Grande Valley north to Dallas, Texas. During their ensuing investigation of that crime, Drug Enforcement Agents (DEA) learned the identity of the supplier and learned that there was a pending investigation in Dallas of the same supplier. Dallas agents were monitoring the supplier's telephone and discovered

conversations between Jose Manuel Gomez and the supplier. The Dallas investigation had been going on since 2005. (D.E. 109, Testimony Agent Bingham). Beginning in September 2006, local DEA agents began investigating a telephone from the Rio Grande Valley. In the fall of 2006, the agents determined the address and identity of Jose Manuel Gomez. By February 2006, they obtained a wiretap on a cell phone registered to Joes Gomez, whom they believed to be Jose Manuel Gomez. (D.E. 109-3 at 148, Testimony Sean Argyros). After intercepting calls made on that phone, the agents learned that two persons used that phone, Manuel and Mayra. Manuel and Mayra were conspiring with others to transport methamphetamine from the Valley to Dallas. Id. at 152. They were using the tapped cell phone to communicate with others known as Sergio, Flaco (in Dallas), and Pedro (Dallas). Through the investigation, agents learned that Sergio and his wife Caroline, who lived in Michoacan, Mexico, were the source of supply for the methamphetamine.

In mid-February 2007, Mayra was to pick up some drugs from another person near the Mexico border. A week later Mayra was determined to be in Dallas, probably visiting Flaco. No arrests were made although the agents confirmed the connection between Mayra and Flaco.

In late March 2007, Mayra was stopped by some unknown individual and may have been robbed. After that incident, there was a flurry of telephone calls between Manuel and Sergio. (D.E. 109, Testimony Argyros). On March 24, 2007, the agents, based upon the information from the intercepted phone calls, watched Mayra go to the local bus station and board a bus with three young women. The girls had pillows and handbags with them. Id. at

164. Mayra had the monitored cell phone with her on the trip.  The bus traveled to Harlingen where Mayra and the three girls changed buses to get on the bus going to Dallas. Id. at 166.

Before the Dallas-bound bus reached the Sarita checkpoint, the agents advised the Border Patrol of the situation. The Border Patrol boarded the bus with a drug dog who alerted to the pillows. Further searching revealed methamphetamine in the pillows carried by the three young girls. Id. at 168. The three girls were detained. When asked whether she was traveling with the three girls, Mayra denied that she knew them. Id. at 193. Mayra was not arrested and was allowed to stay on the bus. Seven kilograms of methamphetamine were recovered from the three girls, six from the three pillows and one kilogram in a purse.

After the girls were detained, Mayra placed a call to several others, including Manuel, to tell them that although some of the drugs had been confiscated, more was still on the bus. Id. at 173. Based upon this information, when the bus stopped for fuel in Robstown, agents boarded the bus and confiscated luggage carried by the girls which contained another 13 kilograms of methamphetamine. Id. at 175. Mayra was not arrested at that time, and continued on her trip. After the Robstown interdiction, Mayra continued to make calls, including calls to Manuel.

Mayra got off the bus before it got to Dallas and one of her children drove from the Valley to pick her up. Manuel and Mayra made a number of calls that day to Sergio and Caroline regarding legal representation of the three girls to make sure the source of supply was obscured. Id. at 178. During the investigation, there were calls between Manuel and Flaco. Id at 179. The wiretaps ended on May 10, 2007 when Jose Manuel Gomez and Mayra

Gonzalez-Reyes were arrested. Flaco was arrested separately.

When Mayra Gonzalez-Reyes and Jose Manuel Gomez were arrested at their home in Mission, Texas, the tapped cell phone was recovered. Id. at 180. The phone was actually found on Jose Manuel Gomez, Jr. Id. at 185.

## B.     Criminal Proceedings

A jury convicted Gomez of conspiracy to possess with intent to deliver more than 500 grams of methamphetamine pursuant to 28 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A). (D.E. 94). He was charged with two co-defendants, Mayra Gonzalez-Reyes and Priscilla Lee Lopez,[1] in a single count indictment after DEA agents intercepted the drugs during their transport to Dallas on March 25, 2007. (See D.E. 81 (sealed final PSR, summarizing evidence from trial). Thereafter, DEA agents obtained a search warrant to search Gomez' home and later arrested him and his two co-defendants pursuant to arrest warrants. (D.E. 1, 6, 8, 10). Gomez pleaded not guilty and invoked his right to a jury trial.

During trial, Mayra Gonzalez-Reyes testified, as did Flaco, also known as Martin Cruz Alvarado. Both testified that the Manuel on the tape was the defendant Jose Manuel Gomez.     Flaco had never met Gomez, but recognized the voice on the tape as belonging to the man he knew as Manuel who organized the transport of drugs. Alvarado had been in Dallas for approximately two years. Before he moved to Dallas, Alvarado visited his family

---

[1]   Lopez was 19 at the time of her arrest. She was one of the three girls on the bus transporting methamphetamine. The other girls were minors and were not charged. in these proceedings.

4

in Michoacan, Mexico. A friend of Alvarado's in Mexico introduced him to Manuel over the phone. The Manuel he met over the phone and Manuel's wife Mayra arranged to move drugs from the Valley to Dallas where Alvarado would pick up the drugs. Id. at 209. Although he never met Manuel in person, Alvarado met Mayra because she came to Dallas with the drugs. Id. at 210. Alvarado was under indictment at the time of trial for his participation in the conspiracy and had several previous drug trafficking convictions from California.

Alvarado identified the voice that belonged to Manuel on Government Exhibit 1 in a telephone conversation in September 2006, in which they were discussing a shipment of methamphetamine. Other audio was played for the jury in which Manuel's voice was identified by Mayra Gonzalez-Reyes as the voice of her co-defendant Jose Manuel Gomez.

After the jury convicted Gomez, this Court sentenced Gomez within the Sentencing Guideline to life imprisonment. (D.E. 89). Gomez appealed to the Fifth Circuit Court of Appeals which affirmed his conviction and sentence in an unpublished per curiam opinion. (D.E. 88, 121).

Gomez timely filed his motion pursuant to section 2255. 28 U.S.C. § 2255.

### III.  MOVANT'S ALLEGATIONS

Gomez claims that his trial and appellate counsel were ineffective because they failed to 1) interview defense and prosecution witnesses that would have provided Gomez with an alibi and failed to develop character evidence and defendant's employment history for use at trial, 2) request a jury instruction on good character and moral background which he claims would have created a presumption that he would not have committed the crimes, 3)

ensure that Gomez could understand the proceedings using the court-appointed Spanish interpreter, 4) seek a plea agreement, 5) to exclude evidence of Gomez' 20 year cohabitation with co-defendant Mayra Gonzalez-Reyes, 6) file a motion to suppress the government's evidence obtained from a wire-tap, 7) interview Mayra Gonzalez-Reyes before trial, 8) seek a downward departure or safety-valve reduction in the applicable Sentencing Guidelines, 9) object to the presentence report, 10) object that the time between the presentence report and the sentencing hearing was too short, 11) use a voice analysis expert to testify regarding identification of the voices on the wiretaps, 12) challenge the prosecution's evidence relating to the cell phone that was tapped and its link to Gomez, 13) object to the prosecutor's closing arguments when the prosecutor allegedly vouched for the veracity of the government witnesses, 14) object to the tape recordings going to the jury room, and 15) "adequately research the law or review the transcripts and trial record." Additionally, Gomez claims that he is actually innocent and his conviction violates his due process and equal protection rights.

## IV.   ANALYSIS

### A.    28 U.S.C. § 2255

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside, or correct his sentence: (1) constitutional issues, (2) challenges to the district court's jurisdiction to impose the sentence, (3) challenges to the length of a sentence in excess of the statutory maximum, and (4) claims that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; United States v. Placente, 81 F.3d 555, 558 (5th Cir. 1996). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range

of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." United States v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992).

## B.      Ineffective Assistance of Counsel

Gomez claims multiple bases for his claim that trial counsel was ineffective. An ineffective assistance claim presented in a § 2255 motion is properly analyzed under the two-prong analysis set forth in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984). United States v. Willis, 273 F.3d 592, 598 (5th Cir. 2001). To prevail on a claim of ineffective assistance of counsel, a movant must demonstrate that his counsel's performance was both deficient and prejudicial. Id. This means that a movant must show that counsel's performance was outside the broad range of what is considered reasonable assistance and that this deficient performance led to an unfair and unreliable conviction and sentence. United States v. Dovalina, 262 F.3d 472, 474-75 (5th Cir. 2001). To show that his attorney's performance at sentencing in a noncapital case was prejudicial under Strickland, the movant must demonstrate that, but for counsel's ineffective assistance, the sentence would have been significantly less harsh. United States v. Navarro-Perez, 200 F.3d 814 at *2 (5th Cir., Oct. 25, 1999) (unpublished) (citing Spriggs v. Collins, 993 F.2d 85 (5th Cir.1993)).

If the movant fails to prove one prong, it is not necessary to analyze the other. Armstead v. Scott, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one"); Carter v. Johnson, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance

7

or actual prejudice is fatal to an ineffective assistance claim.").

A criminal defendant is entitled to effective assistance of counsel on appeal, as well as at trial. Appellate counsel is governed by the same Strickland standard. United States v. Phillips, 210 F.3d 345, 348 (5th Cir. 2000) "When a claim of ineffective assistance of counsel is premised on counsel's failure to raise an issue on appeal, the prejudice prong first requires a showing that [the Fifth Circuit] would have afforded relief on appeal." United States v. Reinhart, 357 F.3d 521, 530 (5th Cir. 2004); Phillips, 210 F.3d at 350.

**B.   Trial Counsel's Failure to Interview Witnesses and Failure to Interview Gonzalez-Reyes**

Gomez complains in his 2255 motion that trial counsel failed to interview a number of witnesses including, but not limited to, his co-defendant Mayra Gonzalez-Reyes. Reasonably effective trial counsel is required to make a reasonable investigation before trial. Failure to do so may fall below professional standards, but if the failure does not result in prejudice, this Court may not revisit the conviction. See Strickland, 466 U.S. at 690.

1. *Witnesses other than co-defendant Gonzalez-Reyes*

During the pretrial proceedings, the only prospective defense witness Gomez identified was Mayra Gonzalez-Reyes, his co-defendant who pled guilty at re-arraignment and agreed to testify  for the United States.[2] (D.E. 108 at 5/11).  At the first Final Pretrial

---

[2]   THE COURT: Has he read the government files? THE DEFENDANT: Yes
THE COURT: And has he told you what the Government witnesses will say? THE DEFENDANT: Yes.
THE COURT: And has he told you what evidence the Government has? THE DEFENDANT: Yes. THE
COURT: . . . that will be presented to the jury? THE DEFENDANT: Yes. THE COURT: have you given
to him witnesses or evidence that you wish him to present to the jury? THE DEFENDANT: Yes. THE
COURT: And has he refused to do so? THE DEFENDANT: Yes. he says it doesn't help me at all. THE

Conference in July, Gomez asked for new counsel. During that hearing, the Court questioned Gomez about his attorney's performance and specifically asked if there were defense witnesses that counsel had not interviewed. Gomez identified only his wife and co-defendant Mayra Gonzalez-Reyes.

During the second final pretrial conference immediately before the start of jury selection, the Court again asked Gomez if his attorney was following his instructions, whether he was satisfied with his attorney's representation, and whether the communication between them was good to which Gomez responded "yes." (D.E. 109 at 15/16). The Court then allowed Gomez to speak privately with his attorney before jury selection.

For the first time in his § 2255 motion, Gomez claims there are other witnesses trial counsel should have interviewed. Gomez' new claim that unidentified persons at Boss

---

COURT: And have you given to him the names of persons who will testify either that the Government witnesses are liars or that you are not involved? THE DEFENDANT: The only evidence I have is a letter. THE COURT: A letter that somebody wrote to you? THE DEFENDANT: Yes. THE COURT: And you believe this letter would tell the jury that you are not involved in this case? THE DEFENDANT: that is what the letter says. THE COURT: And is the person who wrote the letter going to be present to tell that to the jury? THE DEFENDANT: I am not here now [sic]. THE COURT: Is the person going to be here Monday? THE DEFENDANT: I don't know. It's my wife. THE COURT: Does your wife live in the United States? THE DEFENDANT: Yes. THE COURT: And does she know you have a trial coming Monday? THE DEFENDANT: I don't know. She's under detention also. THE COURT: Ah. She is a defendant. . . .THE COURT: and does the Government intend to present Gonzalez-Reyes for testimony? AUSA GONZALEZ: It does, Your Honor. She is a Government witness. THE COURT: The attorney for the Government tells me that she will be present; but regrettably for you, she intends to testify in behalf of the Government, but no in behalf of the defense. . . .THE COURT: Are there other – so we know now that Ms. Gonzalez will be present. We just don't know at this point who she's going to testify for. She's told the Government one thing and you another. Are there other witnesse4s or evidence that you want your attorney to present to the jury? THE DEFENDANT: No, I do not have any more. (D.E. 108 at 5/10). THE COURT: is your attorney refusing to follow any instruction that you have given him about how you want your case handled? THE DEFENDANT: Yes. THE COURT: Has he refused to talk to witnesses whose names you have given him? THE DEFENDANT: No. Id. at 17. THE COURT: . . .are there any witnesses whose names he has given to you that need to appear to defend him? MR. DEL TORO: Your Honor, as he has stated, he has not given me any other witnesses than the ones he has mentioned today, which are going to be called by the Government. Id at 23.

Construction Company would have provided "a possible 'alibi' defense" is contradicted by Gomez' post-trial statements to the Probation Department in which Gomez provided no employer information. (D.E. 124 at 3).

"Claims of uncalled witnesses are disfavored, especially if the claim is unsupported by evidence indicating the witnesses's willingness to testify and the substance of the proposed testimony." Gregory v. Thaler, 601 F.3d 347, 352 (5th Cir. 2010); see also United States v. Harris, 408 F.3d 186, 190 (5th Cir. 2005) (citing Buckley v. Collins, 904 F.2d 263, 266 (5th Cir. 1996)). This is because "the presentation of testimonial evidence is a matter of trial strategy and because allegations as to what a witness would have testified to are largely speculative." Schwander v. Blackburn, 750 F.2d 494 (5th Cir. 1985) (citing Buckelew v. United States, 575 F.2d 515, 521 (5th Cir. 1978) and Murray v. Maggio, 736 F.2d 279, 282 (5th Cir. 1984)). Moreover, the Fifth Circuit has rejected claims that trial counsel's failure to call witnesses constituted ineffective assistance unless the habeas petitioner demonstrates prejudice. Alexander v. Cotter, 775 F.2d 595, 602 (5th Cir. 1985). Because Gomez does not identify the uncalled witnesses, the subject matter of their potential testimony, or what defense they might establish, his allegations are merely conclusory and "do not raise a constitutional issue in a habeas proceeding." Id.

2. *Failure to interview Gonzalez-Reyes*

Gomez complains that by failing to interview Gonzalez-Reyes, trial counsel was unable to verify that Gonzalez-Reyes had been coerced into testifying for the Government. Gonzalez-Reyes appeared at trial and was extensively cross-examined on issues of bias,

10

coercion, and promises of leniency. Counsel attempted to impeach her with a letter she wrote to Gomez in which she states he had nothing to do with the drug conspiracy. This evidence was before the jury which took only an hour to convict Gomez of the conspiracy charges against him. Assuming that she was even available or amendable to interview, Gomez has not established any harm from his counsel's failure to interview Gonzalez-Reyes before the trial.

## C.  Trial Counsel's Failure to Request Jury Instruction on Good Character

Gomez contends that his counsel should have requested a jury instruction on good character. Based upon the record in this case, such an instruction would not have been supported by the evidence. "The court should charge the jury only on issues properly before it; it is not appropriate to convert the charge into a treatise on criminal law." Pierce v. United States, 414 F.2d 163, 168 (5th Cir. 1969).

To the extent that Gomez also contends that counsel should have developed such evidence, the claim is also without merit. Although Gomez asserts in his motion he has never been convicted of a drug related crime, he was previously convicted of two felonies, one was Possession of Marijuana in 1993.[3] Gomez was also previously convicted on two occasions for illegal reentry using names and documents that were not his own, a crime of moral turpitude. See Omagh v. Ashcroft, 288 F.3d 254, 259-60 (5th Cir. 2002) (conspiring to obtain, possess, and use illegal immigration documents is a crime of moral turpitude). A

---

[3]  References to Gomez' criminal history are derived from the presentencing report, D.E. 81, ¶¶ 35/38.

crime of moral turpitude involves dishonesty or lying as an essential element. Id. (citing Jordan v. DeGeorge, 341 U.S. 223, 229, 71 S.Ct. 703 (1951)).

Although these convictions are more than ten years old and not generally admissible to impeach his testimony, see Fed. R. Evid. 609(a), the Court in its discretion could have allowed evidence of his prior convictions to impeach his testimony. Fed. R. Evid. 609, 2006 advisory committee notes to (a)(2); 1974 advisory committee note to subdivision (b).[4] Counsel's decision to forego this hazardous area in his direct examination of Gomez and his failure to argue for a jury instruction on Gomez' good character (outside the record), may have been strategic decisions. "Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Strickland, 466 U.S. at 689. Due to the strong presumption that counsel "rendered adequate assistance," Gomez' complaint on this ground must be rejected.

**D.    Counsel Allegedly Failed to Ensure that Gomez Could Understand the Proceedings**

Gomez claims for the first time in his § 2255 motion that he could not understand the

_____

[4] "Although convictions over ten years old generally do not have much probative value, there may be exceptional circumstances under which the conviction substantially bears on the credibility of the witness. Rather than exclude all convictions over 10 years old, the committee adopted an amendment in the form of a final cause to the section granting the court discretion to admit convictions over 10 years old, but only on a determination by the court that the probative value of the conviction supported by specific facts and circumstances, substantially outweighed its prejudicial value." Id.

Spanish language interpreters that the Court provided for him during all of the proceedings. He does not identify which proceedings he could not understand or when he advised his counsel that he allegedly did not understand the proceedings.

Gomez' claim is contradicted by the factual record. On multiple occasions, the Court spoke directly to Gomez through the interpreter, such as during the several pretrial conferences and during sentencing. Gomez responded to the Court's questioning indicating that he understood. (D.E. 108 at 15, 17, 18, 20, 24, 29). On a few occasions, Gomez did complain that he could not hear or did not understand. (See D.E. 113 at 9 (interpreter advised Court that Gomez complained of not hearing during sentencing); D.E. 110 at 89-90 (interpreter asked that witness be instructed to speak louder); D.E. 108 at 6 (Gomez complains he can't hear the Judge); D.E. 112 at 113 (counsel advised court that Gomez cannot hear)). Every time Gomez indicated that he had a problem understanding or hearing, the Court addressed the issue and corrected the problem.

"The Constitution requires that a defendant sufficiently understand the proceedings against him to be able to assist in his own defense. Ensuring that the defendant has that minimum understanding is primarily the task of the trial judge." Ferrell v. Estelle, 568 F.2d 1128, 1132 (5th Cir.), opinion withdrawn on other grds, 573 F.2d 867 (5th Cir. 1978); see also  United States v. McMillan, 600 F.3d 434, 454 (5th Cir. 2010). A court is required to make reasonable accommodation to ensure that a defendant facing trial can comprehend the proceedings against him, but determining what is reasonable is based on the totality of the circumstances. McMillan, 600 F.3d at 454..

13

Gomez is from Mexico and speaks Spanish. The Court provided Spanish language translators throughout the proceedings. In light of Gomez' failure to alert the trial court to times when he allegedly could not understand the proceedings, the record contradiction of his claims, and the vagueness of Gomez' complaint in these proceedings, this ground of complaint fails.

**E.     Trial Counsel's Failure to Seek a Plea Bargain**

Gomez complains that his counsel was ineffective for failing to seek a plea bargain. Factually, this complaint is completely inconsistent with Gomez' statements to the Court in which he insisted that he was innocent of the charges and his complaint that his attorney encouraged him to plead guilty, as well as his continued assertion of his innocence in this motion. Gomez asked for a different lawyer at the Pretrial Conference on July 25 complaining that his counsel encouraged him to plead guilty if he could do so truthfully. (D.E.108 at 5/23). When asked by the Court whether he wanted a trial or wished to plead guilty, Gomez responded, "I cannot declare myself guilty. I don't have a reason to be guilty. I do not know about this business." Id. at 11. When the Court inquired of trial counsel whether Gomez wanted a trial or to plead guilty, trial counsel responded, that Gomez wanted a trial. Trial counsel informed Gomez, that he believed that the case was weak and that if Gomez could honestly plead guilty then counsel would advise Gomez to do so. Gomez insisted that he wanted a trial. Id. at 23.

In light of Gomez' assertions that he could not truthfully plead guilty, Gomez has not established that his counsel's conduct was deficient, nor can he establish prejudice. To

14

establish prejudice, Gomez would have to prove that he was willing to plead guilty in exchange for a plea agreement, which is contradicted by the record; that if his counsel had approached the government to negotiate a plea, the government would have been interested; and that his sentence in all likelihood would have been less than life imprisonment. See Strickland, 466 U.S. at 700 (not finding prejudice); see also United States v. Navarro, 1999 WL 1338385 at *1 (5th Cir., Dec. 22, 1999) (unpublished) (no prejudice shown in allegation of ineffectiveness where defendant did not prove government would have considered bargain for less than imposed sentence).

A review of the sentencing hearing reveals this Court's belief that this is the unusual case for which a life sentence was appropriate for conspiracy to possess with intent to deliver illegal drugs based upon the quantity and purity of methamphetamine involved. Gomez has not brought any evidence to support his allegations that a plea bargain offer to the government would have been acceptable or that it would have changed his sentence.

**E.    Trial Counsel's Failure to Prevent the Jury from Learning That Mayra Gonzalez-Reyes Cohabited with Gomez for Twenty Years and Had Three Children with Him**

Gomez claims that Gonzalez-Reyes' testimony that she lived with Gomez for twenty years was unfairly prejudicial and that his lawyer was deficient for failing to attempt to exclude that evidence during the trial.

Relevant evidence is presumptively admissible. Fed. R. Evid. 401, 402. Relevant evidence can only be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, or other exceptions not raised here. Fed. R. Evid. 403. Evidence

15

from which the jury could determine the reliability of Gonzalez-Reyes identification of Gomez' voice on the tape recordings, and her identification of other voices is relevant to the government's charge against Gomez.

"The term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." Old Chief v. United States, 519 U.S. 172, 180, 117 S.Ct. 644 (1997). In this case, Gomez' asserted unfairness is that the jury would believe that he is someone who flouts the law.

Gonzalez-Reyes lived with Gomez for twenty years, had three children with him, and used their two daughters as mules in the conspiracy to transport illegal drugs, with Gomez' knowledge. Gomez claimed it was not his voice on the tapes, but the voice of his eldest son named Jose Manuel Gomez, Jr. Gonzalez-Reyes testified that she knew the voices she heard on the government wire tapped calls and could tell the various voices apart. She testified that Gomez' voice was on the tapes, that she knew the voice of his eldest son and could tell the difference between their voices. It was important for the Government to show that Gonzalez-Reyes had a basis for her claim that she could tell the voices apart. Living with someone for twenty years is a good basis for voice identification. See Fed. R. Evid. 901(b)(5) (authentication of voice recordings permissible based upon familiarity with voices). Evidence of Gonzalez-Reyes' long familiarity with Gomez' voice, the voices of his family members, and others was highly probative.

In light of the substantial probative value of the evidence of Gonzalez-Reyes and

Gomez' twenty year cohabitation, Gomez has not met his burden to demonstrate that evidence of their long-term cohabitation was unfairly prejudicial and that the prejudice substantially outweighed the probative value of the evidence.  At no time in the government's case or in its examination of witnesses did the government suggest that Gomez' cohabitation with Gonzalez-Reyes was anything other than proper. Moreover, *defense counsel* elicited the fact that Gomez had other children and other relationships with women in his effort to prove that Gonzalez-Reyes had a motive to hurt Gomez. Counsel used that evidence to impugn Gonzalez-Reyes' credibility during cross-examination and emphasized that evidence in his closing argument. Counsel's failure to object to their cohabitation may well have been trial strategy. In light of the substantial deference accorded trial counsel's strategic decisions and Gomez' failure to show substantial and unfair prejudice, Gomez is not entitled to relief on this issue. See Strickland, 466 U.S. at 690-92 (requiring deference to counsel's strategic decisions and requiring prejudice even if the decisions are faulty).

**F.**     **Trial Counsel's Failure to File a Motion to Suppress the Wire Tapped telephone Calls**

Gomez contends that trial counsel was negligent for failing to move to suppress the fruits of the government wire taps. While the Fourth Amendment to the United States Constitution precludes unreasonable searches and seizures, the government proved that it obtained warrants to wire tap the telephones in this case. Searches conducted pursuant to warrants do not violate the Fourth Amendment.

An application for a wiretap must demonstrate probable cause to believe that the

targets have committed, are committing, or will commit a crime, as well as "probable cause for the belief that particular communications concerning that offense will be obtained through such interception." 18 U.S.C. § 2518(3)(a)-(b). At trial, government witnesses testified to the steps they went through to obtain the wiretap warrants. The reviewing judicial officer must consider the totality of the circumstances to determine whether probable cause has been shown. United States v. Dickey, 102 F.3d 157, 162 (5th Cir. 1996). In addition, the government is required to make a showing of necessity which is interpreted by the Fifth Circuit to mean that the judicial officer must make a common-sense determination that the wiretaps are necessary. United States v. Guerra-Marez, 928 F.2d 665, 670 (5th Cir. 1991).

For counsel to obtain a hearing on a motion to suppress, a defendant must make a substantial preliminary showing that the affidavit submitted in support of the warrant was knowingly, intentionally or recklessly false and that the allegedly false statements were necessary to establish probable cause. Franks v. Delaware, 483 U.S. 154, 155-56, 98 S.Ct. 2674 (1978); United States v. Martin, 332 F.3d 827, 834 (5th Cir. 2003).

Gomez does not allege any basis for his claim that a motion to suppress should have been filed, other than it is "elementary to make motions to suppress." His conclusory statements do not establish that the factual basis for the wiretap warrant was insufficient or that the federal agents relied on false or misleading statements to obtain the warrants. Counsel was not required to file a motion to suppress that had no legal basis. See Clark, 19 F.3d at 964 (counsel is not ineffective to failing to make frivolous objection).

18

**G.     Trial Counsel's Failure to Employ Voice Analysis Expert**

Gomez claims that counsel was ineffective for failing to employ a voice analysis expert. He claims that unspecified scientific testing would have established that his voice was not on the tapes.

Voice analysis is not an exact science. To date, the Fifth Circuit has not approved the admission of voice identification expert testimony. See United States v. Angleton, 269 F.Supp.2d 892, (S.D. Tex. 2003) (collecting authorities). The state of the law concerning the admissibility of voice analysis is ambiguous. United States v. Drones, 218 F.3d 496, 503 (5th Cir. 2000).

Trial counsel cannot be faulted for not hiring an expert whose testimony about unspecified scientific tests is likely to be excluded at trial. Moreover, in this case, the jury heard portions of over 29 tapes, on many of which Gomez' voice was identified. (See D.E. 60, Government exhibits 1-29, transcripts of wire taps). The jury also heard Gomez when he testified in Spanish, the same language that he spoke on the tapes. The jury was able to determine without scientific evidence whether Gomez' voice at trial was the same voice they heard when the tapes were played.

Gomez has failed to establish any prejudice from his counsel's failure to hire a voice recognition expert. He has failed to demonstrate what scientific testing should have been done, that such an expert was available and would have testified as Gomez alleges, or that this Court would have admitted such evidence. Gomez' counsel was not ineffective for failing to engage such an expert. See Drones, 218 F.3d at 502-03 ("Given the current state

19

of the law regarding the admissibility of expert voice identification testimony and the expert testimony presented at the evidentiary hearing, we cannot say that counsel's choice of strategy was unreasonable and therefore deficient."); see also Evans v. Cockrell, 285 F.3d 370, 377-78 (5th Cir. 2002) (rejecting claim that expert witness should have been called where petitioner failed to establish substance of witness' testimony).

**H.   Trial Counsel's Failure to Object to the Jury Getting the Tape Recordings in the Jury Room**

Gomez claims that his trial counsel should have objected to the tape recordings going to the jury room to review during deliberations. He does not explain any legal basis for this assertion other than the jury's review while deliberating somehow violated his right to present a defense and deprived him of his right to counsel.

The recordings were admitted into evidence without objection and portions of each were played for the jury during the trial. Counsel cross-examined the sponsoring witnesses about events on the tape and about identification of the voices.

Because the jury heard the evidence and heard the explanations and cross-examination of the testimony regarding those exhibits, Gomez cannot show prejudice. Furthermore, the jury's short deliberations suggest they did not have time to focus on the recordings. (D.E. 112 at 143/44, Jury retired at 1:56 and returned at  2:57 p.m.).

**I.   Evidence Connecting Gomez to Cell Phone**

Gomez complains that the government never connected him to the tapped cell phone. This is a sufficiency of the evidence claim that is not cognizable in a section 2255 motion.

Forrester v. United States, 456 F.2d 905,  907 (5th Cir. 1972); see also Mendoza v. United

States, 365 F.2d 268, 272 (5th Cir. 1966) (recognizing sufficiency of the evidence not a

cognizable 2255 claim). This issue should have been raised on direct appeal.[5]

## J.    Failure  to Object to Improper Jury Argument

Gomez complains that his trial counsel should have objected to the government's

argument regarding Gomez' credibility. Gomez testified at trial. On direct appeal, Gomez

challenged the propriety of the government's argument as to Gomez' credibility.[6] The Fifth

Circuit held that the argument was proper. (D.E. 121) ("The record establishes that the

Government's stated credibility argument was drawn from the evidence adduced at trial.

Thus, Gomez has not demonstrated reversible plain error.").

"A prosecutor is confined in closing argument to discussing properly admitted

---

[5]  Gomez could not have prevailed on direct appeal on this issue. Mayra Gonzalez-Reyes
testified that she bought the phone for him. The wiretap evidence, after she and Flaco testified
that Manuel was this defendant, also tied him to the telephone.

[6]  Although Gomez does not identify in his 2255 motion which portions of the
government's arguments he complains of, the Court has reviewed the argument. Some portions
addressing credibility are reproduced below: "Clearly, [Mayra] was not proud of that fact. It was
difficult for her testify. You could tell. It was obvious that it was a painful experience for her, a
wife testifying against a husband." (D.E. 112 at 131). The prosecutor later in his argument
discussed the evidence further, "Jose Manuel Gomez had his wife and children do his dirty work.
And his testimony here today is very telling. What's the first thing he told me? 'That's not my
wife. I have another wife. Oh, I've been with her twenty years. We have three kids, but that's not
my wife.' What else did he tell you. 'My son's the drug dealer. Grave misunderstanding. you've
got it all wrong. It's my son. That's who you were listening to.' He lied. He lied to you. You
don't have to believe a word he said today. He was not a credible witness. He lied, and why did
he lie. To save himself." Id. at 133. After Gomez' counsel spent much of his argument attacking
the credibility of Mayra Gonzalez-Reyes, the prosecutor responded, " Mayra Gonzalez-Reyes is
not the most eloquent witness. She was not the most eloquent, but she was truthful and it was
clearly painful for her to testify. She's testifying against her husband. But she's telling the truth
and the wiretap does not lie." Id. at 139.

evidence and any reasonable inferences or conclusions that can be drawn from that evidence." United States v. Vargas, 580 F.3d 274, 278 (5th Cir. 2009). "A prosecutor may argue fair inferences from the evidence that a witness has no motive to lie, but cannot express a personal opinion on the credibility of witnesses." United States v. Gracia, 522 F.3d 597, 601 (5th Cir.2008). Thus, a prosecutor may properly argue the evidence and the inferences that may be drawn from that evidence so long as argument does not cross the line into improper vouching. See United States v. McCann, 613 F.3d 486, 495 (5th Cir. 2010). The prosecutor argued the evidence and the reasonable inferences from the evidence. The Fifth Circuit determined that the prosecutor's argument did not cross the line into vouching for the credibility of any of the witnesses.

Defense counsel had no legitimate basis to object to the government's closing argument. Counsel is not ineffective for failing to make a legally frivolous objection. See Clark, 19 F.3d at 964.

## K.   Trial Counsel's Performance at Sentencing

Gomez contends that his counsel was ineffective at sentencing because he failed to 1) file objections to the PSR, 2) urge a downward departure or safety valve, 3) object to the failure of the government to provide adequate time between the jury trial and sentencing, which did not meet minimum standards. Each of these complaints fails.

### 1. *Objections to PSR*

Trial counsel filed multiple objections to the PSR. (D.E. 79). Counsel also brought his objections to the attention of the trial court during sentencing; all of the objections were

overruled. (D.E. 113 at 4/5). Trial counsel objected to the proposed finding that Gomez was a manager or organizer, an objection that this Court overruled. Id. Gomez does not state what other objections he thinks should have been filed. He is factually incorrect that counsel filed no objections.

      2.  *Downward departure or safety valve*

Gomez complains in part that counsel did not urge the Court to consider a safety valve downward departure. A defendant may be sentenced to less than the mandatory minimum when the participant qualifies for a downward departure based upon the safety-valve provision of the Sentencing Guidelines. U.S.S.G. § 5C1.2. To qualify, a defendant must not have more than 1 criminal history point, may not have used violence or credible threats of violence or possess a firearm or other dangerous weapon in connection with the offense; was not an organizer, leader, manager or supervisor of others and was not engaged in a continuing criminal enterprise; and "not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence that the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan . . . ." U.S.S.G. § 5C1.2(d).

At the time of sentencing, Gomez still denied he had any role in the conspiracy, he had not debriefed, and the evidence established that he was an organizer or manager. Under these circumstances, Gomez did not qualify for consideration under the safety valve provisions of section 5C1.2. Counsel is not ineffective for failing to make a frivolous argument. See Clark, 19 F.3d at 964.

Gomez also argues that counsel should have argued for other unspecified downward departures. A downward departure may be considered for persons who have a minor or minimal participant role. U.S.S.G. § 3B1.2. Subsection 3B1.2 of the Sentencing Guidelines provides for potential downward departures of 2-4 levels when a defendant is a minimal (4 level) or minor (2 levels) participant in a drug enterprise. Gomez does not qualify as he was determined to be a manager or organizer by this Court. Trial counsel's failure to urge a role reduction after this Court overruled his objections to the PSR on this ground does not constitute ineffective assistance under these circumstances.

3. *Timing of sentencing*

Gomez' trial lasted three days from July 30 through August 1, 2007. (See D.E. 66/69). The Court ordered preparation of a PSR on August 1, 2010. The PSR was prepared September 2, 2007, but the record does not reveal when it was provided to Gomez' counsel. (D.E. 81). Gomez filed objections to the PSR on September 25, 2007. The final PSR was filed October 3, 2007. (D.E. 81, 83). Sentencing was held on October 10, 2007, 70 days after conviction, 38 days after the PSR was prepared, and 15 days after the filing of Gomez' objections.

Rule 32(e) requires that the PSR be provided to the defendant, his counsel, and counsel for the government "at least 35 days before sentencing . . . ." Fed. R. Crim. P. 32(e)(2). At least 7 days before sentencing, the PSR must be served on the parties including an addendum addressing any unresolved objections. Fed. R. Crim. P. 32(g).

During sentencing, this Court asked Gomez whether counsel read him the PSR in

Spanish to which he responded "yes." The Court also asked whether there were any corrections, and the response from counsel referenced only the previously filed objections, which the Court addressed on the merits. To establish prejudice for lack of proper notice, a defendant must show that the revised presentence report contained factual inaccuracies and he could have successfully objected to the report, and thereby received a shorter sentence, if he had been furnished with a copy of the report as required by Rule 32. See United States v. Esparza-Gonzalez, 268 F.3d 272, 274 (5 th Cir. 2001). Gomez does not explain how he might have been able to rebut any factual inaccuracies or miscalculations in the PSR to establish prejudice if in fact the PSR was not provided to him more than 35 days before sentencing. Counsel was not ineffective for failing to object to the timing of the sentencing hearing.

**L.     Ineffective Assistance Appellate Counsel**

Gomez globally contends that appellate counsel did not adequately research the law, or review the trial transcripts and record. As a result, according to Gomez, appellate counsel "was unable to mount a serious challenge to the convictions." (D.E. 124 Ground Four). Appellate counsel's conduct is held to the same Strickland standard as trial counsel. Phillips, 210 F.3d at 348.

Appellate counsel challenged the government's closing argument and this Court's procedure at sentencing. The Fifth Circuit found neither of those complaints to have merit. (D.E. 121). Gomez appears to contend in other portions of his § 2255 motion that counsel should have challenged the sufficiency of the evidence, but based upon this Court's

25

familiarity with the evidence and the application of the proper standards of review, such a challenge would have been frivolous. The government presented substantial evidence to support every element required for conviction and to support the within guideline sentence. Appellate counsel is not required to raise all non-frivolous argument and is certainly not required to raise frivolous ones. See Phillips, 210 F.3d at 348. Furthermore, Gomez' challenge lacks specificity and does not raise a constitutional issue in this habeas proceeding. See Alexander, 775 F.2d at 602.Gomez' claim that appellate counsel was ineffective is without merit.

**J.     Actual Innocence**

Gomez continues to maintain his innocence in his section 2255 motion, as he did at trial and at sentencing. (D.E. 124, Ground 3). Gomez provides no new evidence to support his claim of innocence. The government did not address this claim in its response.

Whether such a free-standing claim of innocence is grounds for habeas relief is an open question. See House v. Bell, 547 U.S.518, 554-55 (2006). In House, a capital case, the Court held that House had produced sufficient evidence of "actual innocence" as a gateway to review of his defaulted constitutional claim and remanded the case. The Court rejected House's claim of free-standing innocence, referring back to Herrera v. Collins, 506 U.S. 390, 417 (1993). In Herrera, after first denying that a free-standing claim of innocence was cognizable on habeas relief, the Court then noted that in a capital case, "a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional, and warrant federal habeas relief if there were no state avenue

26

open to process such a claim." Id. "[T]he threshold showing for such an assumed right would necessarily be extraordinarily high." Id. Because Gomez presented no new evidence, he is not entitled to consideration of his claim of actual innocence. Any sufficiency of the evidence claim should have been brought on direct appeal and is not cognizable in a § 2255 motion. See United States v. Walker, 68 F.3d 931, 934 (5th Cir. 1995) (""[r]elief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal . . .").

## V.   CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Gomez has not yet filed a notice of appeal, this Court nonetheless addresses whether he would be entitled to a COA. See Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000)(a district court may *sua sponte* rule on a COA because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court. Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A COA "may issue. . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). This standard requires a § 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further. United States v. Jones, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon Slack, 529 U.S. at 483-84).

As to claims that the district court rejects solely on procedural grounds, the movant must show both that "jurists of reasons would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack, 529 U.S. at 484.

The Court concludes that reasonable jurists could not debate the denial of Gomez' § 2255 motion on substantive grounds nor find that the issues presented are adequate to deserve encouragement to proceed. Miller-El, 537 U.S. at 327 (citing Slack, 529 U.S. at 484). Similarly, as to the claims that this Court has addressed on procedural grounds, the Court finds that Perez cannot establish at least one of the Slack criteria. Specifically, jurists of reasons would not find this Court's procedural rulings debatable. Accordingly, Gomez is not entitled to a COA as to his claims.

## VI.  CONCLUSION

For the foregoing reasons, Gomez' motion to vacate, set aside or correct his sentence (D.E. 124) is DENIED. Additionally, Jose Manuel Gomez is DENIED a Certificate of Appealability.

Ordered this  1st  day of May 2011.

_Hayden Head_

HAYDEN HEAD
SENIOR U.S. DISTRICT JUDGE